IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION

No. 2:16-CV-11-FL

| | |
|---|---|
| VALERIE SUTTON-GALLOP, )<br>)<br>Plaintiff/Claimant, )<br>)<br>)<br>v. )<br>)<br>NANCY A. BERRYHILL, Acting )<br>Commissioner of Social Security, )<br>)<br>Defendant. ) | **MEMORANDUM AND<br>RECOMMENDATION** |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-26, DE-31] pursuant to Fed. R. Civ. P. 12(c). Claimant Valerie Sutton-Gallop ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her application for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the matter be remanded for further proceedings.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB on May 27, 2010, alleging disability beginning December 2, 2007. (R. 21, 299–300). Her claim was denied initially and upon reconsideration. (R. 119–55). A hearing before an Administrative Law Judge ("ALJ") was held on May 4, 2012, at which Claimant was represented by counsel and a vocational expert ("VE")

and a witness for Claimant appeared and testified. (R. 41–80). On July 6, 2012, the ALJ issued a decision denying Claimant's request for benefits. (R. 156–71). On September 18, 2013, the Appeals Council remanded the case for further consideration. (R. 172–76). On February 18, 2014, a hearing before a different ALJ was held, at which Claimant was represented by counsel and a vocational expert ("VE") and a witness for Claimant appeared and testified. (R. 81–118). On July 25, 2014, the ALJ issued a decision denying Claimant's request for benefits. (R. 18–40). On December 24, 2015, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded*

2

*by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

3

If as a result of the above analysis the ALJ concludes that a claimant is disabled and there is medical evidence that the claimant has drug addiction or alcoholism ("substance use"), the ALJ must determine whether the substance use is a contributing factor material to the determination of disability. *Id.* § 404.1535(a). If the substance use is found to be material, the claimant cannot be considered disabled under the Act. 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J) ("An individual shall not be considered to be disabled for purposes of this subchapter if alcoholism or drug addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled."). The claimant has the burden of proving that the substance use is not material. *See Overstreet v. Astrue*, No. 4:11-CV-58-JG, 2012 WL 4355505, at *2 (E.D.N.C. Sept. 21, 2012) (citations omitted).

In making the materiality determination, the key factor is whether the claimant would still be disabled if she stopped using drugs or alcohol. 20 C.F.R. § 404.1535(b)(1). The Commissioner must evaluate which of the physical and mental limitations would remain absent substance use and then determine whether any of the remaining limitations would be disabling. *Id.* § 404.1535(b)(2). If the remaining limitations are found not to be disabling, the claimant's substance use is deemed a contributing factor material to the determination of disability, and the claimant is found not disabled. *Id.* § 404.1535(b)(2)(i). However, if the remaining limitations are found to be disabling, the substance use is deemed not to be material, and the claimant is determined to be disabled. *Id.* § 404.1535(b)(2)(ii).

## IV. The ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant to be disabled but found that Claimant's substance use disorder was a contributing factor material to the

4

determination of disability and accordingly determined that Claimant was "not disabled" as defined in the Act. (R. 24–33). At step one, the ALJ found Claimant had not engaged in substantial gainful employment since July 30, 2009. (R. 24). Next, the ALJ determined Claimant had the following severe impairments: depressive disorder, anxiety disorder, cocaine dependence, opiate dependence, degenerative disc disease of the lumbar spine, degenerative joint disease bilateral shoulders, somatization disorder, and obesity. *Id.* At step three, the ALJ concluded Claimant's impairments, including the substance use disorders, met Listings 12.04 and 12.09 in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 24–25). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments caused moderate to marked limitations in her activities of daily living, marked limitations in social functioning and concentration, persistence, and pace, and four or more episodes of decompensation. *Id.* The ALJ then reconsidered the step two and three findings absent Claimant's substance use, concluding that Claimant would continue to have severe impairments, but would not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1. (R. 25–26). The ALJ determined that if Claimant stopped substance use, she would have mild restrictions in activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that if Claimant stopped substance use she would have the ability to perform a light work[1] with the following

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R.

limitations: frequent, but not constant, overhead reaching with the right, non-dominant, upper extremity; performing simple, routine, repetitive tasks with only occasional contact with co-workers and the general public; and no high-stress work that involves assembly line pace or production quotas. (R. 26–31). At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a nurse. (R. 31–32). At step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined that if Claimant stopped substance use there would be jobs that exist in significant numbers in the national economy that Claimant could perform. (R. 32–33).

Claimant alleges that the ALJ erred by (1) finding Claimant's substance use to be material; (2) failing to give proper weight to the medical opinions of the treating physician; (3) finding Claimant has the RFC to perform a limited range of light work; (4) failing to properly assess Claimant's credibility regarding the severity of her symptoms; (5) failed to convey all Claimant's physical and mental limitations in the hypothetical posed to the VE; and (6) finding Claimant was not disabled as a result of her impairments. Pl.'s Mem. [DE-27] at 24–30.

## V. DISCUSSION

### A. The ALJ's Consideration of Claimant's Substance Abuse

Claimant contends that the ALJ erred by finding Claimant's substance abuse to be material to her disability. Pl.'s Mem. [DE-27] at 24–25. Specifically, Claimant argues that her disability is based mainly upon her physical impairments and functional limitations, the record contains substantial evidence of physically disabling impairments prior to the first date of evidence of substance use, her physical impairments persisted and were disabling regardless of substance use,

---

§ 404.1567(b).

and her mental impairments met Listings 12.04 (depressive, bipolar, and related disorders) and 12.09 (Substance Addiction Disorder).[2] *Id.* at 25. In response, the Commissioner argues that the ALJ properly determined that Claimant's substance use was material to her disability and the ALJ's decision is supported by substantial evidence. Def.'s Mem. [DE-32] at 6–28.

### 1. The Listings

To show disability under the listings, a claimant may present evidence either that the impairment meets or is medically equivalent to a listed impairment. *See Kellough v. Heckler*, 785 F.2d 1147, 1152 (4th Cir. 1986); 20 C.F.R. § 404.1526 (regulations for determining medical equivalence). Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. § 404.1520(d). "The [ALJ] . . . is responsible for deciding . . . whether a listing is met or equaled." S.S.R. 96-6p, 1996 WL 374180, at *3 (July 2, 1996). In order to determine whether a medical impairment equals a listing, the ALJ is bound to "consider all evidence in [claimant's] case record about [the] impairment(s) and its effects on [claimant] that is relevant to this finding. . . . [The ALJ] also consider[s] the opinion given by one or more medical or psychological consultants designated by the Commissioner." 20 C.F.R. § 404.1526(c). "For a claimant to qualify for benefits by showing that his . . . combination of impairments is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as

---

[2] The ALJ also determined that absent substance use Claimant's impairments would not meet or equal Listings 12.06 (related to anxiety and obsessive-compulsive disorders), 1.02 (related to major dysfunction of a joint), and 1.04 (related to disorders of the spine) (R. 25–26), but Claimant does not challenge these findings, Pl.'s Mem. [DE-27] at 24–25.

7

that of a listed impairment." *Sullivan*, 493 U.S. at 531. "Plaintiffs bear the burden of proving their condition meets a listing and, accordingly, the responsibility of producing evidence to sustain their claims." *Rowe v. Astrue*, No. 5:07-CV-478-BO, 2008 WL 4772199, at *1 (E.D.N.C. Oct. 28, 2008) (citing *Pass*, 65 F.3d at 1203).

Listing 12.04 generally addresses disorders such as depression, mania, and bipolar disorder and is satisfied if an individual meets the A and B criteria, or the C criteria. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. The A criteria require medically documented persistence of depressive syndrome, manic syndrome, or bipolar syndrome, each meeting various additional requirements. *Id.* The B criteria require a showing of marked restrictions in at least two of the following areas: activities of daily living; social functioning; maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration. *Id.* The C criteria require "[m]edically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities," again meeting various additional requirements. *Id.*

Listing 12.09 relates to "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system." *Id.* § 12.09. This listing is structured somewhat differently than the other listings related to mental impairments. "Listing 12.09 does not impose independent requirements; instead, it incorporates the listing-level standards for nine different mental and physical disorders associated with substance abuse, including Listing 12.04 . . . ." *Harris v. Colvin*, No. 1:14CV1005, 2016 WL 698083, at *6 (M.D.N.C. Feb. 19, 2016) (citing 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A) ("Listing 12.09 is structured as a reference listing; that is, it will only serve to indicate which of the other listed mental or physical impairments must be

8

used to evaluate the behavioral or physical changes resulting from regular use of addictive substances.")). Thus, to meet Listing 12.09 another relevant listing must also be met. *See Overstreet v. Astrue*, No. 4:11-CV-58-JG, 2012 WL 4355505, at *3 (E.D.N.C. Sept. 21, 2012) ("Listing 12.09 is met when there are behavioral or physical changes associated with the regular use of substances that affect the central nervous system and any one of various specified listings is met, including the other applicable listing here, Listing 12.04.").

The ALJ concluded that in the absence of substance use Claimant would have only mild restrictions in activities of daily living, moderate difficulties in social functioning and concentration, persistence, and pace, and no episodes of decompensation. (R. 25–26). In support of the finding that Claimant would have only mild restrictions in activities of daily living, the ALJ noted that Claimant's reports of minimal activities are not consistent with the overall evidence, citing Claimant's ability to perform some light household chores and some work and her independence in activities of personal care with appropriate hygiene and grooming. (R. 25). With respect to social functioning, the ALJ noted that despite Claimant's reports of social withdrawal due to depression, she was pleasant and cooperative with physicians and examiners, reported a supportive relationship with her significant other, and was interested in repairing her relationship with her children, which had been negatively impacted by her cocaine use. *Id.* In finding Claimant would have only moderate difficulty in the area of concentration, persistence, and pace absent substance use, the ALJ noted that at an August 27, 2010 consultative examination Claimant's memory was intact, she was able to perform simple calculations, and she could interpret proverbs correctly. *Id.* The examiner also indicated Claimant could perform simple repetitive tasks, relate to supervisors and co-workers in the workplace, and could tolerate the stress and pressure associated with daily work activity. (R. 1231).

9

Finally, the ALJ noted that absent substance use, Claimant responded well to medication with improvement in her symptoms and stable mood. (R. 30).

Claimant asserts in a conclusory manner that her mental impairments meet Listings 12.04 and 12.09, but cites no evidence in the record to contradict the ALJ's findings that in the absence of substance use they do not. Pl.'s Mem. [DE-27] at 25. Claimant points to a March 8, 2010 treatment note indicating that she had been taking high-risk medication for a long time and suggests that she became addicted to prescription medicine (with the exception of cocaine). *Id.* Even so, this does not contradict the ALJ's finding that Claimant's mental impairments would not have met a listing absent substance abuse. When a claimant "fails to articulate why her medical impairments do, in fact, meet all of the elements of a given listed impairment," she fails to meet her burden. *Rowe*, 2008 WL 4772199, at *1 (citing *Sullivan*, 493 U.S. at 530); *see also Harris*, 2016 WL 698083, at *9 ("[C]onclusory arguments without citation to the record are insufficient to meet [the claimant's] burden[.]") (citation omitted). Accordingly, Claimant has failed to demonstrate that the ALJ erred in determining her mental impairments would not meet or equal Listings 12.04 or 12.09 in the absence of substance use.

### 2. The RFC Determination

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. § 404.1545(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and

other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. § 404.1545(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Bowen*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7.

Claimant contends that her inability to work is mainly based on her physical impairments that were severe and disabling prior to August 31, 2012, which she contends is the first date of any evidence of substance use;[3] her physical impairments limit her to a less-than-sedentary exertion level; the opinions of Dr. Chandi and Dr. Ahmed support a more limited RFC than found by the ALJ; and the ALJ failed to properly assess Claimant's credibility. Pl.'s Mem. [DE-27] at 25–29. The Commissioner contends that the record does not support Claimant's assertion that her back and shoulder impairments are disabling; the ALJ properly assessed the medical opinion evidence and Claimant's credibility in formulating the RFC; and the ALJ's RFC determination is supported by

---

[3] The record indicates Claimant used heroin in 2011. (R. 1754).

11

substantial evidence. Def.'s Mem. [DE-32] at 6–24.

Claimant underwent surgery for her right shoulder on July 17, 2009, her left shoulder on August 4, 2009, and her back on August 12, 2009. The ALJ found Claimant's degenerative disc disease of the lumbar spine and bilateral shoulders to be severe impairments at step two and considered these impairments in formulating her RFC, absent substance use. (R. 24, 27–31). The ALJ discussed Claimant's testimony and treatment notes, and then summarized his conclusion related to Claimant's physical impairments as follows:

> Regarding the claimant's musculoskeletal impairments, repeat physical examinations have not shown any significant abnormalities. At most, the claimant had mild tenderness in the lumbar spine. There was full range of motion. Moreover, motor strength, reflexes, and sensation were intact. She was able to ambulate without an assistive device, although she apparently occasionally used one. There was no evidence that the claimant required an assistive device, during the relevant period. Objective medical tests failed to show any significant abnormalities. Her complaints of upper extremity weakness appeared somatic. Thus, only conservative treatment was recommended with medication and injections. She did not undergo any surgical intervention, during the relevant period. Additionally, she related having relief of her pain with medication and did not report any adverse side effects of prescribed medication.

(R. 27–30).

### i. The Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. § 404.1545(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* § 404.1527(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such

as consultative examiners. *Id.* § 404.1527(c)(2). However, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Here, the ALJ acknowledged Dr. Chandi's October 12, 2012 and February 6, 2014 medical source statements and opinions that Claimant was capable of less than sedentary work, required an assistive device, and was likely to be absent from work more than three times a month due to her impairments. (R. 31, 1599–1604, 1760–65). However, the ALJ afforded these opinions little

13

weight, stating they were not supported by Dr. Chandi's treatment reports or the overall evidence, Claimant previously worked with Dr. Chandi, and Dr. Chandi's notes indicate Claimant sought to influence the medical source statement. (R. 31). Claimant contends the ALJ erred in failing to assign great weight Dr. Chandi's opinions. Pl.'s Mem. [DE-27] at 25–26. Claimant argues that Dr. Chandi was Claimant's treating physician and his opinions are consistent with and supported by the longitudinal record as well as the findings of Claimant's other medical providers and the consultative examinations of Dr. Ahmed and Dr. Mitchell. *Id.* The Commissioner, in support of the ALJ's determination, relies on the ALJ's discussion of Claimant's treatment records and the opinions of the state agency consultants. Def.'s Mem. [DE-32] at 11–16.

The ALJ's assessment of Dr. Chandi's opinion is insufficient, because the ALJ failed to explain how Dr. Chandi's opinions are not supported by his own treatment reports or the overall evidence (R. 31), and it is not apparent from the record. Furthermore, the October 27, 2010 opinion of Dr. Ahmed (R. 1270–74), a consultative examiner who also reviewed Claimant's records, arguably lends support to Dr. Chandi's opinion and contradicts the ALJ's RFC determination. Dr. Ahmed's examination of Claimant revealed limited range of motion in the lumbar spine and both shoulders, she was unable to walk on heel and toes, and she was unable to squat and rise due to pain. (R. 1270, 1274). Dr. Ahmed concluded that her prognosis for gainful employment was guarded and her impairments seemed to affect her ability to do prolonged sitting, standing, walking, and overhead activities.[4] (R. 1274). The ALJ discounted Dr. Ahmed's opinion as "inconsistent with his exam findings and not supported by the record, absent substance use." (R. 31). However, again, the ALJ

---

[4] The ALJ determined Claimant could perform a limited range of light work, which "requires a good deal of walking or standing, or . . . sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b). Therefore, Dr. Ahmed's opinion is in apparent conflict with the ALJ's RFC determination.

14

failed to explain any inconsistency and it is not readily apparent.

The ALJ's summary of Claimant's treatment records, cited by the Commissioner in support of the ALJ's analysis of Dr. Chandi's and Dr. Ahmed's opinions, does not sufficiently explain the weight afforded these opinions. The treatment note of June 24, 2010, cited by the ALJ and the Commissioner for the proposition that Claimant was "doing quite well," (R. 27), Def.'s Mem. [DE-32] at 13, refers specifically to how her anemia was responding to the medication Coumadin (R. 1202) rather than her general physical or mental health. Claimant routinely visited the pain clinic, on referral from Dr. Chandi, from March 8, 2010 through February 1, 2012, and the treatment notes reflect consistent reports of severe pain in her back and both shoulders, diagnoses of adhesive capsulitis of the shoulder, lumbar spondylosis, and chronic pain, positive examination findings, positive findings on an MRI of the lumbar spine, prescriptions for Oxycodone and other medications such as Lyrica and Neurontin in increasing dosages, and shoulder injections. (R. 1144, 1234–53, 1257–59, 1387–90, 1397–98, 1400–01, 1405–08, 1412–13, 1417–19). Subsequent records cited by the ALJ and the Commissioner relate predominately to treatment for Claimant's chest pain, mental health, and drug addiction rather than Claimant's back and shoulder impairments and chronic pain. (R. 28–29); Def.'s Mem. [DE-32] at 13–15. Further, while the ALJ correctly noted that Claimant reported on September 12, 2012 that she was discharged from the pain clinic (R. 28, 1723), on October 24, 2012, Claimant reported that she was waiting for a pain clinic referral (R. 1728). The record contains evidence that could support the opinions of Dr. Chandi and Dr. Ahmed that Claimant was more restricted than the ALJ determined in the RFC analysis. To be sure, the ALJ noted some evidence that would tend to weigh against a finding that Claimant's back and shoulder impairments limited her to a less restrictive RFC. But where the record is ambivalent, "[t]he ALJ's failure to

'build an accurate and logical bridge from the evidence to his conclusion' constitutes reversible error." *Lewis v. Berryhill*, 858 F.3d 858, 868 (4th Cir. 2017) (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016)). Therefore, it was not enough here to simply state in a conclusory fashion that the opinions were not supported by treatment notes or the overall record.

The ALJ's additional reasons for discounting Dr. Chandi's opinions do not constitute substantial evidence. The ALJ noted that Claimant testified she previously worked alongside Dr. Chandi. (R. 31). Presumably, although the ALJ did not expressly explain, the ALJ believed Dr. Chandi may have exhibited favorable bias in his opinion because he had a working relationship with Claimant. At the administrative hearing the ALJ asked Claimant how long she had worked for Dr. Chandi. (R. 104). Claimant responded that she did not work for him but worked "as a nurse with him being in the hospital seeing patients" in the late 1990s or 2000, before she became ill. (R. 104–05). The fact that Claimant knew Dr. Chandi from working with him at the hospital several years prior to their patient-doctor relationship is a reed too thin to support the rejection of Dr. Chandi's opinion. The ALJ also noted that Claimant "sought to influence [Dr. Chandi's] preparation of a medical source statement." (R. 31). This appears to be a reference to a February 29, 2012 chart note from a nurse to Dr. Chandi regarding Claimant's statement that Dr. Chandi "would redo her 2-29-12 medical examination request from DDS" and that Dr. Chandi was to "mark the box on the last page none and permanent box [sic] and leave all work/training activities blank." (R. 1719). The note reflects that Dr. Chandi would "discuss with patient." *Id.* Dr. Chandi completed two medical source statements, the first dated October 12, 2012 and the last dated February 6, 2014, and the comments in the February 29, 2012 chart note do not appear to correspond to either form. (R. 1599–06, 1719, 1760–67). At the administrative hearing, the ALJ confirmed that Claimant gave Dr.

16

Chandy a form to fill out in 2012, but asked no further questions to clarify the nature of any discussions they had regarding the completion of the form. (R. 105). These secondary reasons provided by the ALJ for discounting Dr. Chandi's opinion are insufficient to constitute substantial evidence. *See Dunn v. Colvin*, 607 F. App'x 264, 267 (4th Cir. 2015) ("An ALJ's determination as to the weight to be assigned to a medical opinion generally will not be disturbed absent some indication that the ALJ has dredged up 'specious inconsistencies,' *Scivally v. Sullivan*, 966 F.2d 1070, 1077 (7th Cir. 1992), or has failed to give a sufficient reason for the weight afforded a particular opinion, see 20 C.F.R. § 404.1527(d) (1998).").

The Fourth Circuit Court of Appeals recently explained in a published opinion that the "perfunctory" rejection of a treating physician's opinion was error. *See Lewis*, 858 F.3d at 865, 867 (finding the ALJ's explanation that opinions were "not entirely consistent with the longitudinal conservative treatment record, the documented clinical and examination findings, and [the claimant's] stated ongoing capabilities" was inadequate because it, among other things, "overlook[ed] critical aspects of [the claimant's] treatment history" and the treating physician's opinions were bolstered by non-treating sources). The ALJ provided a one-sentence explanation for the weight afforded to the opinions of Claimant's treating physician, which were arguably supported by the opinion of Dr. Ahmed, whose opinion was also dismissed in one sentence. (R. 30–31). It is not apparent from the ALJ's discussion of these opinions or the ALJ's summary of the medical evidence how these doctor's treatment and examination notes or the overall evidence undercut their opinions, and it is not appropriate for the court to speculate as to other grounds that may support the ALJ's decision. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. Dec. 17, 2015) (per curiam) ("[C]ircuit precedent makes clear that it is not our role to speculate as to how the ALJ applied the

17

law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."); *Hornal v. Berryhill*, No. 7:15-CV-00266-F, 2017 WL 634697, at *4 (E.D.N.C. Feb. 16, 2017) ("[A] reviewing court must judge the propriety of [agency] action solely by grounds invoked by the agency," and "[i]f those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it deems a more adequate or proper basis.") (internal quotation marks and citations omitted). Accordingly, it is recommended that the matter be remanded for the ALJ to sufficiently explain the weight afforded to Dr. Chandi's and Dr. Ahmed's opinions.

Because reconsideration of the opinion evidence may impact the remaining issues raised by Claimant related to the ALJ's credibility analysis, the RFC determination, and the hypothetical to the VE, it is recommended that these issues receive additional consideration on remand, as necessary, in light of the ALJ's further consideration of the opinion evidence. *See Jones v. Astrue*, No. 5:11-CV-206-FL, 2012 WL 3580482, at *8 (E.D.N.C. Apr. 19, 2012) ("Because this court finds that remand on the issue of the treating physician's opinion will affect the remaining issues raised by Claimant, it does not address those arguments."), *adopted by*, 2012 WL 3580054 (Aug. 17, 2012).

## VI. CONCLUSION

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-26] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-31] be DENIED, and the matter be REMANDED for further proceedings.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **August 11, 2017** to file written objections to the Memorandum and Recommendation. The presiding district judge must conduct his or her own review (that is, make a de novo determination) of those portions of the

Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, this the 28 day of July, 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge